UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID LEWICKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-02564-TWP-DML |
| ) | |
| DUSHAN ZATECKY individually and in his ) | |
| official capacity, as Superintendent for the ) | |
| Pendleton Correction Facility, ) | |
| DUANE ALSIP individually and in his official ) | |
| capacity as Assistant Superintendent of Operations ) | |
| for the Pendleton Correction Facility, ) | |
| JEREMY ALBERSON individually and in his ) | |
| official capacity as Maintenance Supervisor for the ) | |
| Pendleton Correctional Facility, ) | |
| MICHAEL CAYLOR individually and in his ) | |
| official capacity as a Lieutenant and Supervisor ) | |
| over G-Cell House at the Pendleton Correctional ) | |
| Facility, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Defendants' Motion for Summary Judgment. Dkt. [21]. Plaintiff David Lewicki ("Lewicki"), is a prisoner incarcerated at Pendleton Correctional Facility ("PCF"). In this civil rights action, Lewicki alleges that the Defendants denied him proper heating and cooling in his cell at PCF between September 2, 2016 and June 10, 2017, exposing him to extremely high and low temperatures and causing him significant physical and mental injuries. The Court screened the Complaint and permitted Lewicki to proceed with Eighth Amendment claims against all four Defendants in their official and individual capacities.

The Defendants have moved for summary judgment on the basis that Lewicki failed to exhaust available administrative remedies before bringing this lawsuit as required by the Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons set forth below, the Defendants' Motion, Dkt. [21], is **granted in part** and **denied in part**.

## I. LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)

(footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the Defendants' burden to establish that the administrative process was available to Lewicki. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. <u>UNDISPUTED FACTS</u>

The following facts, construed in the manner most favorable to Lewicki as the non-movant, are undisputed for purposes of the motion for summary judgment.

**A.** **<u>The Grievance Process</u>**

At all times relevant to his Complaint, Lewicki was confined by the Indiana Department of Correction ("IDOC") at PCF. The IDOC has an Offender Grievance Process that is intended to permit inmates to resolve concerns and complaints relating to their conditions of confinement prior to filing suit in court. Dkt. [21]-1 at 11–35. According to IDOC policy, an inmate is provided

with information about the Offender Grievance Process during admission and orientation upon arrival at an IDOC facility.[1] *Id.* at 19–20.

The Offender Grievance Process consists of three steps. In order to exhaust administrative remedies, an offender must pursue a grievance through the final available step.

The Offender Grievance Process begins with the offender contacting staff to discuss the matter or incident subject to the grievance and seeking informal resolution. At this stage in the process, the offender may request an informal grievance form within five business days of the incident giving rise to the grievance. *Id.* at 24. The offender must then submit the informal grievance form within five business days after receiving it. *Id.*

The second step in the Offender Grievance Process involves submission of a formal grievance to the facility's offender grievance specialist. A formal grievance must be submitted within five business days after receiving a response to the informal grievance, within ten business days "after the offender first seeks an informal resolution," *and* within twenty business days from the date of the incident. *Id.* at 25–26.

A formal grievance must comply with several criteria. *Id.* at 27–28. If it does not, the grievance specialist has discretion to adjudicate it but may instead reject it and return it to the offender with an explanation of the deficiency and how it may be corrected. *Id.* at 28–29. Within five business days after receiving a rejected formal grievance, the offender may then revise the grievance and return it to the grievance specialist. *Id.* at 29. If a formal grievance is initially submitted on time but it is rejected as noncompliant, the offender may revise and resubmit the grievance within five business days even if doing so results in the revised grievance being

---

[1] Lewicki states that he was never provided with information about the grievance process upon his arrival at PCF. *See* Dkt. [24] at 2. However, given that Lewicki filed numerous grievances, this dispute has no bearing on the resolution of the motion for summary judgment.

4

submitted after the original deadline to file a formal grievance. *Id.* at 26 ("The time limit is extended if a form submitted within that timeframe is returned to the offender after screening").

The third and final step of the Offender Grievance Process is an appeal. However, an inmate may not appeal from a formal grievance that has been rejected as noncompliant. *See* Dkt. [21]-1 at 30–32 (indicating that the Offender Grievance Specialist must respond to a formal grievance or, at least initiate an investigation after accepting a formal grievance, before the inmate may appeal); *see also* Dkt. [27] at 3 (stating that Lewicki "could not appeal these rejected grievances").

**B.     Lewicki's Grievances**

The records presented by the parties show that Lewicki filed six informal grievances, seven formal grievances, and two appeals concerning cold conditions in his cell between February 8 and March 24, 2017. Dkt. [21]-1 at 37–56; Dkt. [24]-1 at 2–3. However, in this Entry, the Court need not examine all of Lewicki's grievances to resolve the question of whether he exhausted his administrative remedies.

On February 10, 2017, Lewicki filed an informal grievance stating that, on February 8 and 9, 2017 he was without heat, and the windows near his cell were open:

> There has been no heat, the windows open, and it is below freezing. This has been an ongoing issue and Feb. 8th and Feb 9 has been below 20º and @ night below 0. This is unexceptable [sic]. The heat has been turned on and off @ your discretion so this is clearly a form of cruel and unusual punishment.

Dkt. [21]-1 at 37.

Lt. Michael Caylor responded on February 20, 2017. Lt. Caylor did not indicate that he would take any action in response to Lewicki's complaint. Instead, Lt. Caylor stated that he closed the windows at the beginning of winter, that a special tool was required to open them, and that he could not understand how the windows could be open given that he sent the tool to an outside

5

storage unit: "I closed all the windows at the beginning of winter on 9-2-2017 when I came on Unit the windows were open and I closed the ones that I could reach. I don't know how they were being open when the tool was sent to outside tool control." *Id.*

On March 1, 2017, Lewicki filed a formal grievance stating that he had been without heat "since before February 24" and that the windows "had been open this whole time."

> There has not been heat in my cell since before Feb. 24th and there have been many days below freezing. The windows in front of my cell have been open this whole time and I have been <u>extremely cold many days and nights. This is cruel and unusual punishment. Lt. Caylor has been aware of this and has not done anything to resolve the problem. In his response to my informal grievance he does not deny my claim, just made an excuse. It is unexceptable [sic] that I am being continuesly [sic] exsposed [sic] to below freezing tempertures [sic] with the wind blowing directly into my cell!</u>

Dkt. [21]-1 at 39.

Offender Grievance Specialist Camay Francum ("Francum") did not adjudicate Lewicki's formal grievance. Instead, she found that it failed to comply with the requirements set forth in the Offender Grievance Process and rejected it on March 2, 2017. The form Francum used to return Lewicki's formal grievance cited only one defect: that it needed a "specific incident date" *Id.* at 38. The form also stated, "If you choose to correct the problem(s) listed above, you must do so and re-submit this form within 5 working days." *Id.*

Although Lewicki filed his formal grievance within five business days after his informal grievance was returned by Lt. Caylor, he did not submit it within ten business days after he submitted the informal grievance as required by the Offender Grievance Process. *See id.* at 26. Nevertheless, Francum did not reject the formal grievance as untimely, even though the rejection form gave her an option to do so. *Id.* at 38.

Although Lewicki's formal grievance did not explicitly refer to the conditions in his cell on February 8 and 9, 2017, it directly referenced Lt. Caylor's response to his informal grievance

6

filed on February 10, 2017. *Id.* at 39. No evidence indicates that Lewicki filed a different informal grievance between February 10, 2017 and March 1, 2017. The rejection form afforded Francum an opportunity to reject the formal grievance on the basis that it was not preceded by an informal grievance, but she declined to do so:

> There is no indication that you tried to resolve this complaint informally. If you have tried to resolve it informally, please fill out the grievance form to indicate that. If you have not tried to resolve it informally, you have five days to begin that process. (This error is NOT subject to the 5-day return notice at the bottom of this form.)

*Id.* at 38 (emphasis in original).

Later on March 2, 2017, Lewicki corrected and resubmitted his formal grievance. In his revised informal grievance, Lewicki specifically complained that the windows were open and that he was without heat on February 9, 2017: "It was below freezing Feb. 9, 2107. The heat was off and the windows directly in front of my cell open. Lt. Caylor was aware of this and has done nothing. This is cruel and unusual punishment and is ongoing. The windows need to be closed." *Id.* at 41.

Francum rejected Lewicki's revised formal grievance and returned it to him as defective. The form Francum used to return the revised formal grievance to Lewicki asserted that he failed to submit it within the timeframe required by the Offender Grievance Process: "You have submitted the form too late and have not shown any good reason for the delay. Grievance forms must be submitted within the time limits set out in A.P. 00-02-301." *Id.* at 40. Specifically, she stated that "you get 5 days to proceed to the next level after staff have answered. You have waited passed [sic] your allowable time frame." *Id.* at 40.

7

Again, Francum's rejection notified Lewicki that he could revise and resubmit his formal grievance. *Id.* Lewicki did not resubmit this formal grievance. He filed an appeal on March 9, 2017, Dkt. [24]-1 at 3, but received no response.

### III. DISCUSSION

The undisputed facts show that Lewicki failed to exhaust available administrative remedies with respect to some, but not all, of his claims.

### A. Claims Arising from Hot Conditions

The Complaint alleges that, before January 10, 2017, the Defendants kept the windows in his housing unit closed and the heat turned to an excessive level, creating extremely hot conditions in his cell. However, the Defendants assert that Lewicki never filed any grievances concerning extreme heat in his cell. In support of that assertion, the Defendants have included a declaration attesting that the IDOC has no record of any grievances concerning heat in Lewicki's cell. Dkt. [21]-1 at ¶ 44. Moreover, both parties have produced copies of grievances prepared by Lewicki, but none of them address heat.

When reviewing a motion for summary judgment, the Court assumes that facts asserted by the movant and supported by admissible evidence are true unless the non-movant specifically controverts them with admissible evidence. *See* Local Rule 56-1(f) (1). The Defendants have offered admissible evidence to support their contention that Lewicki never submitted a grievance concerning extreme heat in his cell. Although Lewicki states that he "filed multiple Request Slips addressing this issue," Dkt. [24] at 3–4, he has not supported that assertion with any evidence that he filed a grievance concerning heat in his cell.

Even viewing the facts in the light most favorable to Lewicki, the Court finds no dispute that he failed to complete the Offender Grievance Process with respect to his claims of extreme

8

heat in his cell. As a result, the Defendants are entitled to judgment as a matter of law on Lewicki's claims concerning extreme heat, and those claims will be **dismissed without prejudice**. *See Ford,* 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

B.  **Claims Arising from Cold Conditions**

The Complaint also alleges that, from January 10, 2017 through June 2017, the Defendants failed to close the windows outside Lewicki's cell or provide him with heat inside the cell, creating extremely cold conditions. The undisputed facts indicate that Lewicki exhausted available administrative remedies for claims regarding cold conditions from February 8, 2017 forward.

As set forth in Section II(B) above, the documents the Defendants filed in support of their Motion show the following sequence of events:

1. On February 10, 2017, Lewicki filed an informal grievance concerning cold conditions on February 8 and 9, 2017. Dkt. [21]-1 at 37.

2. On February 20, 2017, Lt. Caylor responded but offered no resolution. *Id.*

3. On March 1, 2017, Lewicki filed a formal grievance referencing the February 10, 2017 informal grievance and regarding cold conditions "since before Feb. 24th." *Id.* at 39.

4. On March 2, 2017, Francum returned Lewicki's formal grievance as defective because it did not identify one specific incident date. Francum did not reject the formal grievance on grounds that it was submitted late or that it was not preceded by an informal grievance. The rejection form told Lewicki that, if he chose to correct the defect, he "must do so and re-submit this form within 5 working days." *Id.* at 38.

5. Later on March 2, 2017, Lewicki submitted a revised formal grievance concerning cold conditions on February 9, 2017. *Id.* at 41. He submitted the revised formal grievance within the time required by the Offender Grievance Process, *id.* at 29, and Francum's rejection form, *id.* at 38.

6. On March 3, 2017, Francum returned Lewicki's second formal grievance as defective. This rejection informed Lewicki that he waited too long after receiving Lt. Caylor's response to his informal grievance to file a formal grievance. *Id.* at 40.

9

Based on these records, the Court finds no dispute that Lewicki exhausted all available administrative remedies with respect to claims regarding cold conditions in his cell from February 8, 2017 forward.

It is irrelevant that Lewicki filed his formal grievances more than five working days after receiving Lt. Caylor's response to his informal grievance. It is also irrelevant that Lewicki's first formal grievance did not explicitly reference cold conditions on February 8 and 9, 2017 as in his informal grievance. Because Francum did not reject Lewicki's first formal on either of these grounds, they have been waived as defenses against exhaustion. "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). Francum rejected Lewicki's first formal grievance on only one basis: it addressed cold conditions on a range of dates instead of a specific date. Afterward, both the rejection form and the Offender Grievance Policy entitled Lewicki to correct the formal grievance and return it within five days. *See id.* at 29, 38. There is no dispute that he did so.

The undisputed facts further establish that, after Francum rejected Lewicki's revised formal grievance as late, no other administrative remedies remained available to him with respect to his complaint of cold conditions on February 8 and 9, 2017. Lewicki could not correct the defect Francum cited in rejecting the revised formal grievance: he could not travel backward in time and submit it closer to Lt. Caylor's rejection of his informal grievance. Moreover, Lewicki could not appeal because Francum rejected his formal grievances rather than accepting and adjudicating them. Under the Offender Grievance Process, the Offender Grievance Specialist must accept an inmate's formal grievance before the inmate can appeal. *See* Dkt. [21]-1 at 30–32. Indeed, the

Defendants noted in their reply that Lewicki "could not appeal these rejected grievances." *See* Dkt. [27] at 3.

Even if the facts leave some dispute as to whether Lewicki was obligated to file a grievance appeal, the undisputed facts before the Court indicate that he did so. Lewicki submitted a grievance appeal in support of his response to the Motion for Summary Judgment. Dkt. [24]-1. The Defendants did not challenge the veracity or admissibility of that document in their reply, and so the Court must assume that Lewicki filed it consistent with his representation. *See* Local Rule 56-1(f)(2).

It also is immaterial that Lewicki failed to complete the Offender Grievance Process with respect to his subsequent grievances. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "Once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* Lewicki alleges that he was deprived of humane conditions in his cell for an ongoing period in the winter and spring of 2017. By grieving his conditions as they existed on February 8, 2017, and exhausting his available remedies once, Lewicki fulfilled his obligation to provide the prison staff with an opportunity to close the windows and make necessary repairs to the heating system. Lewicki was not required to continue in the Offender Grievance Process into perpetuity.

No evidence submitted by either party indicates that Lewicki filed any grievances concerning cold conditions before his February 10, 2017 informal grievance concerning cold conditions on February 8 and 9, 2017. As such, the Defendants are entitled to judgment as a matter of law with respect to any claim that Lewicki suffered from cold conditions in his cell before

11

February 8, 2017. However, there is no dispute that Lewicki exhausted his available administrative remedies with respect to cold conditions occurring from February 8, 2017 forward.

## IV. RULE 56(F) NOTICE AND FURTHER PROCEEDINGS

The Defendants' Motion for Summary Judgment, Dkt. [21], is **GRANTED** as to all claims concerning conditions of extreme heat in Lewicki's cell and all claims relating to cold conditions before February 8, 2017. These claims are **dismissed without prejudice**.

The Defendants' Motion for Summary Judgment, Dkt. [21], is **DENIED** as to all claims concerning conditions of extreme cold in Lewicki's cell from February 8, 2017 forward. Moreover, the record before the Court shows that Lewicki is entitled to summary judgment on these claims with respect to the Defendants' affirmative defense of exhaustion. Therefore, pursuant to Federal Rule of Civil Procedure 56(f)(1), the Court gives the Defendants **NOTICE** of its intent to grant summary judgment in Lewicki's favor on this issue. The Defendants shall have **through Wednesday, April 25, 2018**, within which to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in Lewicki's favor on this issue, or (b) withdraw their affirmative defense of exhaustion on this issue.

**SO ORDERED.**

Date: 4/11/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Lewicki, #104771
Pendleton Correctional Facility
Electronic Service Participant – Court Only

Ryan J. Guillory
OFFICE OF THE INDIANA ATTORNEY GENERAL
ryan.guillory@atg.in.gov

Andrew Scheil
OFFICE OF THE INDIANA ATTORNEY GENERAL
andrew.scheil@atg.in.gov